Thank you for having me. My name is Kevin Merch. I represent the Rutherfords and my wife, Mrs. Merch, she also represents the Rutherfords here today in this appeal. This matter has once before been before this court and has been tried, appealed, and we are back up now on an issue on a motion for a new trial under Rule 33. The reason for the new trial under Rule 33 is that a number of, a large part of the evidence substantiating our Rule 33 request or motion was left out, denied, not considered, one of those terms, by the court. Very briefly, just so you know, Dr. and Mrs. Rutherford are two chiropractors in Reno, Nevada. They have had a dispute for probably 12 years now with the Internal Revenue Service. They, during the term of that dispute, they hired several experts in the city of Reno to try to straighten out a number of problems that existed in their tax affairs. And during that period of time, paid literally hundreds of thousands of dollars to the government to make sure that they did not have the problems that they face certainly today. The one eventually – Actually, that's not the issue. Isn't the issue whether or not the presence of these agents in the courtroom affected the conduct of the jurors? That is the issue. And thanks for giving me my lead in. You know, you start and then you need the lead in. The – what happened after trial, in the Reno courtroom, we sit up – we kind of sit up in front and then there's – and our backs are, you know, are to the gallery, like this and other places. And throughout the trial, there were a number of people that were sitting near, very near to the jury box. And following the trial and while this matter was up on appeal, we received some information from actually a third party who came to us and said that she was working for somebody who was a juror and they said that they ruled the way they ruled, which was to find my clients guilty because they were afraid. And the reason they were afraid was for two reasons, that the Rutherfords had the ability and did hire several attorneys, one of which was myself, and several investigators, several experts from the accounting field from very large firms. Those people came up and proved, at least to our point, but I guess not to other people, but to our point, that these people didn't owe any money. In fact, they were owed money and they were part of just kind of a mess and a vendetta that existed because a whole bunch of people had gotten mad at each other. Okay? So – That's somehow irrelevant to what's before us. What happened then is a juror came to us and said, well, we were sitting in the jury box. There were Internal Revenue Service people that were staring at us. And each day they would come in and not only would they stare, they would make faces. They – with respect to one, Ms. Walker, she became – she was intimidated. And she said – so I asked her for an affidavit. I received an affidavit from her and an affidavit from four or five other people to see if this was really ongoing, if there was something in there. We then filed a motion after we received these affidavits, and we did receive a hearing under Rule 33. Under the rule – we weren't successful under the rule, and we feel that there was some error. We should have been successful under the rule. The reasons that we weren't successful is because we felt the court applied a rule that we understood worked differently than it did, which is how law sometimes works. In particular, we believed that if a – if there was a contact, any type of a contact between a juror and a person on the other side, that it would create a situation where the burden of proof for prejudice would shift into the government, and then the government would have the burden of showing that there was not a – any type of prejudice that had occurred. That was the assumption. Your contention that this was jury tampering? Both. It was a jury tampering and a jury – I guess you would call it discussions with jurors, which could be – What? What was the second? It was jury tampering, but also discussions with the juror. You mean ex parte contacts. Ex parte contacts. Thank you. Both. Although Judge Reed looks at it as just being, I believe, a jury tampering. The reason we believe it was an ex parte contact is because we believe that these people that showed up every day, we believe it was ten, they say it was seven people showed up, that these people, they were trying to get their message across. And the message that they were trying to get across was that the government was very powerful, that there could be some problems that existed, and they should know that. The – Well, that would be jury tampering, wouldn't it, if that were the case? Yes. But how could it be short of jury tampering and still be just a simple ex parte contact? If it's – if you look at somebody and there's no threat implied or no threat perceived, let's see, it's a stare. People look at juries to see how they're reacting to testimony. Is there something wrong with that if it's not – if it's not a threat? No. Okay. I believe that if someone makes, as we do in courtrooms, we look and we catch an eye or something like that, I don't think that's jury tampering. I'm still trying to figure out what you're arguing here. I take it you're quarreling with the district court's decision that you had to show that the agents intended to influence the jury. Is that one thing you're claiming? Yes. Okay. All right. The judge made a finding, a fact, that there was no intent. Okay? So you'd have to show that was clear error. So I guess what – you're left with the legal argument that he made a mistake in the standard he was applying. So what should he have inquired into? I'm trying to find – and I'm thinking about Rule 606B. So what inquiry should the judge have made? And I hope I answered your question as you're requesting it. I don't think – I think that the judge was subject to analyzing the facts based upon an objective standard instead of a subjective standard. When the government inquired, you brought in the IRS people and asked them questions or questions were asked. He asked a number of questions regarding did you intend to cause these people to in any way feel uncomfortable. He went through these whole list of questions. I don't believe that's a standard. I believe the standard is that it's an objective standard based upon – Okay. Well, what is the standard? I believe it's an – once – You said you believe it is an objective standard. What is this objective standard? Okay. The objective standard is once there has been a contact, that the burden of proof as to whether or not there has been prejudice shifts to the other side. No, wait. Once there's been a contact, what is a – not any contact, not just looking at somebody. Once there's been a what? It's more than – from the documents we provided, it was much more than just a glance. It lasted for two weeks at least, or about two weeks at a time. Staring. Staring occurs. It was staring. It caused a person to be afraid. And she stated it caused her to be afraid. So then the test would be – Then the test at that point in time is – Is it shifts the burden of proof over to the other side. Simply because someone's afraid, even if it's totally unreasonable. If someone says that there's a large person in the courtroom, that makes me afraid. I would agree with you except that in a situation where there are ten people. Yeah. And this lady is sitting at the front. And we have four or five athletes that confirm it. And these ten people are making it so that she can't even look in that direction without them staring directly into her eyes. That she has to turn her body to get out of the way so that she does not become intimidated. I think that's more than a stare. Well, no, you're giving a result. I'm really asking for the standard, which Judge Lestane was asking about. What is it that the district judge has to find? He doesn't find that there was any intentional interference. He must have defined that there was something, either an objective. The conduct would have objectively caused a reasonable juror to be concerned. Or does he find one juror was actually concerned? Or is that second inquiry part of an objective standard? What is the test you think should be applied? I think the second test should be applied. That once it's determined that there is what I call a contact, but what we've described, that then at that point in time the judge has an objective standard. He looks at it as if he is, he looks at everything as if he is a juror and says, would this cause me consternation in performing my duties as a juror? And some of the affidavits were overwhelming. Well, the affidavits are really overtaken by the testimony, aren't they? Not really. What had happened was, and yes, let me just say. The testimony was weaker than the affidavits. Yes. And let me tell you why. What had happened is we were told, and it's part of the appeal, we were told that the affidavits, certain parts of them could not be discussed. Okay? And the parts that couldn't be discussed were basically taken out, and so we were left with other things that we could discuss. And that gets into an error under Rule 33 as to whether it's extraneous or. Well, and take that, but take the testimony of Walker. Yes, ma'am. She says, well, the first couple of weeks, I was kind of a little bit disturbed by this, but then I got used to it, and it didn't affect what I did. It sort of made me uncomfortable at first. It didn't intimidate me. Actually, she said, and I haven't, you know, she was, she was intimidated for the first couple of weeks, if I remember correctly. Well, it's a little ambiguous. And then at that point in time, at that point in time, she turned her head away and she just didn't consider it. But my issue with that is, under the Sixth Amendment, I truly do believe that a defendant is entitled to have a fair impartial juror during all phases of that trial. A couple of weeks in this case, which it was a case, I think, that lasted 16 days, and she should have been allowed to have a fair trial during the entire 16 days. She shouldn't have been intimidated during those 16 days, because if you're intimidated during those 16 days. Well, it's not even clear that she said she was intimidated during those days. What happened was she said it made me uncomfortable at first. Then it says, at some point, did it intimidate you? The answer was, I wouldn't say really after a month being there. I got used to them doing it. It didn't intimidate me. Then the question is, at the beginning, when it was incurring in the first couple of weeks, did you find it, their presence and staring, to be intimidating? The answer is yes. Then there's an objection. I believe she testified she was uncomfortable rather than intimidated. The Court, I'm going to let them ask it a second time. I think it repeats an earlier question. Read the question, Mr. Porter. Then we shift to another subject. I don't know what that means. I'm going to let him ask it a second time. Does that mean he was approving that earlier answer, or that he was giving you permission to ask it again? I don't recall, to tell you honestly. All I know is that on page 38 of my opening brief, the question was at the beginning when it was occurring in the first couple of weeks, did you find it, their presence and staring to be intimidating? That's the question I just read you. It comes to yes, and then comes the objection. Because it was contrary to what she had just said. She said she was, it made her uncomfortable. And then the question was, did it intimidate you? And she said yes, and there was an objection. And then the Court says, I'm going to let him ask it a second time. I think it repeats an earlier question. And I don't know quite what that means. And I do not, as I stand here. Okay. Whatever the standard is that you've now said is the standard, what is the witness who would have supported the district judge finding that there was jury tampering under this standard that you say applies? Which is the witness? I think one is Vicki Walker. Walker? It's basically that answer, isn't it, that she felt intimidated? And there was other things in her affidavit that I believe should not have been. No, not the affidavit, the testimony. The affidavits were a lot stronger for you than the testimony. They backed off when they came to give their testimony. And we're looking at their testimony. That's what happened at the hearing that counts. So what other testimony was there? There was this Walker testimony. Was that it? No. There were other people in the courtroom who came to testify that, I think one was Mr. Archie Granata. What's that name? Archie Granata, who was a certified public accountant. Okay. Who talked about the intimidation. He wasn't a jury, right? Pardon? Was he a jury? He was a witness. A witness. Yes. And he noticed the staring that was ongoing within the trial. And there were other people within the courtroom. I don't have the list that also stated the same thing. But may I make one point? One point I think is very important is before we got going on this whole process, you know, to get a new rule 33 motion on, we had affidavits. And our affidavits were restricted, and we were told we couldn't go into certain areas. But you haven't appealed any of those rulings, have you? I felt we had, but I guess we hadn't, if you don't think so. Well, I'm asking, I don't recall in the briefs that there's any appeal from any of the rulings or any objection to the limitations on the testimony. I would have to check that, to be honest with you. But even so, the significance of that is, is that the reason that the testimony was weaker than what was in the affidavits was because we were informed, and we so informed the witnesses, that certain things could not be discussed, much like a motion in limine. For instance, if you take a look at the Vicki Walker testimony, and she says she was intimidated for two weeks because of this. To me, in my mind, if she's intimidated for two weeks, I'm concerned because for two weeks my client may not have received what he's entitled to under the Sixth Amendment. And if you take a look, then, at her full affidavit and the part that was taken out by the judge, it shows that then weeks after that there were some extraordinary things said in the jury room which would lead you to believe. Am I correct that page 126 of the transcript is also the same as Walker? And when it said, and how did the glaring make you feel? In the beginning it was uncomfortable. Was it also intimidating? I don't, for me, know. Is that, was that, I think that's the same. It's a few pages after that earlier testimony we talked about. That 126 of the transcript? Yeah, the transcript of the hearing. Yeah. Yeah, I've got 126 here. Yes, I'm there. Yes, and the third question, second question, how did the glaring make you feel? In the beginning it was uncomfortable, which is what she said the first time. Was it also intimidating? I don't, for me, know. Doesn't that take care of the intimidating problem? No, because when she later stated that she was intimidated for the first two weeks. Well, she said she was uncomfortable. It was earlier that there was a confusing part where she said intimidating and they objected. And then later they come back to it and she says she wasn't intimidated. I think that what she was referring to is that as time went on in the trial, she described how she stopped looking towards these people that were staring at her. Well, that's not quite right, because the first question on the top of the page is, were you ever glared at by the men in the first two rows, or ever glared at? All right, yes. Okay. But that's your strongest testimony, is Ms. Walker, right? No. No. Okay, good. I think the strongest testimony, again, goes into what was taken out of the affidavits where we were not allowed to discuss. Well, there we get to the problem of whether you have objected to that and appealed that. Well, we think we did, and if we didn't, we apologize, Your Honor. But if you get into those items, they're truly extraneous and they're not intrinsic. And they paint a picture that is a pretty horrendous picture. You see what it is. What is it that you think in that? What else is it, other than what we've discussed, that you think paints the picture? It would be at 138 of our excerpts. And it says, for instance, the affidavit of Vicki Walker at paragraph 6. And it says, this discussion as to possible retaliation against jurors by certain IRS auditors resulted because there were a number of IRS employees who attended the trial, were present every day, and every time I looked at them, they seemed to be glaring at the jury. This was very unsettling to some of the jurors. Also, given the behavior of the IRS towards the Rutherfords over a nearly ten-year period, we were aware that the IRS could make it difficult for individuals who crossed them. And the next affidavit of Terry Hoff says, then the other affidavit of Terry Hoff discusses the reason why Mrs. Rutherford did not testify, and it says one of the other things discussed during deliberations was the fact that Mrs. Rutherford did not testify. Several jurors wondered why Mrs. Rutherford did not testify. We felt that under the circumstances, Mr. Rutherford should have defended herself. Unfortunately, on that issue, the law seems to be fairly clear, unless you have something to contradict it, that if the jury violates the instructions and discusses things it shouldn't, we can't discover that from testimony of the jurors. That seems to be borrowed by Rule 606. Unless you have something that would help us get around or over that barrier. We do know that there's two jurisdictions that seem to take that position very strongly. But our position was that they were – there was a very – But you said some State courts, I think, that have a different view. No, no, no. If I did, I made a mistake. There are Federal circuits that have certainly taken that position. But the point that I'm trying to make, and apparently not very well, is that that is part and parcel of what was occurring here because of this very large group of people attending every day and staring, and admittedly staring at these people and creating a problem that should have been looked at objectively. It wasn't looked at objectively. Instead, what happened was the Court looked at it in terms of – in terms of a subjective point. Were you intimidated, for instance, was a question. And I don't think that is the standard under a case called Ruggiero. I think the Court has to look at it from an objective standard. And the objective standard would be something like this. If there's been a contact and if there's a number of IRS or Internal Revenue Service people in a courtroom and those individuals every day show up and those individuals every day are staring and causing consternation among normal jurors, is that enough when there's ten of them for a 16-day trial? Is that enough of something that could impair a fair jury trial? Well, probably if you had testimony from a number of jurors that the stares caused consternation, that they were concerned, afraid, intimidated, they – and not what happened in the jury room, but that during the trial that was their reaction. That would be a different case. But here we're talking about what evidence is there that jurors were. Now, if you just take – if you don't consider what the jurors say, what do you have for people stared at jurors? We have the testimony that we discussed earlier, Mr. Granata, a certified public accountant who was testifying, who felt the same type of intimidation. In fact, was intimidated to the point that he did not want to testify and who is a gruff guy. And he testified. There were other people who noticed it within the – and it's included in the evidentiary hearing, that noticed the exact same type of behavior and they felt intimidated. And I think it's not only jurors that were intimidated. It was witnesses that were intimidated. The – it was unusual to have these people there. Mr. Young, co-counsel in this case, he asked that those people leave. They were not required to leave. And so what it basically was, was it's scary. I mean, I am afraid when an Internal Revenue Service person comes to my door and buzzes and says, I want to talk to you about something and comes upstairs in my office. It's unpleasant. Take ten and put them in a room where no one can talk and in a room you've never been used to. And then consider this. Did the client get a fair trial? And did he get a fair trial based upon the affidavits that were excluded by Judge Reed? For the most part, those types of retaliatory remarks were excluded, but that's – they went into the jury room talking about whether or not retaliation was going to occur. And I think in those types of situations, that's very good evidence that these people, after having gone through this very intense staring match of these people that normally would not be there, walk into the jury room and extraneously discuss the possibility of having retaliation against them, of losing their homes, of losing their lives. I don't know that somebody can get a fair trial. All right. Well, thank you, counsel. We'll give you a couple of minutes for rebuttal, if you want. Thank you very much. May it please the Court. My name is Michael Karam. I'm from the Tax Division, United States Department of Justice. Based on counsel's argument and my review of the briefs in this case, I'm confident saying that the issues in this case are adequately considered in our brief. I would be more than happy to answer any questions the Court might have so it might clarify the positions. The district court in this case properly, appropriately and correctly addressed the various issues presented, and we've set them forth in our brief and I think would be willing to stand on our brief. Do you believe that if jurors are intimidated by the conduct of government agents, that they receive a fair – that the defendant receives a fair trial simply because the government didn't intend to intimidate them? Well, Your Honor, if the – if the government – if, as the case here, the government agents did not intend to intimidate the jury, then – But did. But – well, then the issue would become – the burden would then be on – And the court here clearly found no jury tampering, found there was no evidence of jury tampering. Well, why does jury tampering have to be intended? I mean, if you interfere with the process – the government interferes with the process of the jury and deprives people of a fair trial, why does it matter whether they intend to or they don't – they just behave in conduct that is improper? Well, I would think, Your Honor, that in – I would think, Your Honor, in that instance, that there – the district court would make a finding of tampering. I don't know that a straight jury contact that thing – you know, and if you have the tampering, you have the remor – you have the remor presumption. We don't have the remor presumption here because we had a finding, correct finding, that there was no jury tampering. And then we had – at that point, the burden becomes on the – I thought he made the finding of no jury tampering because he found no intent to tamper. That's correct, Your Honor. Okay. But that's not what Judge Reinhart just said. Judge Reinhart just said, suppose they didn't intend to tamper, what they did was improper and it actually intimidated the jurors, and the jurors couldn't do their duty because they were intimidated. Then – and I thought you said that would have been jury tampering, even though they didn't intend it. If I – if I said that, Your Honor, I misspoke. Okay. The – It doesn't seem like – sound like a fair trial, though. If the jury is intimidated and can't do their duty, I mean, how is that a fair trial, even if the government doesn't intend to stop them from doing their duty? It may be – it may be possible, Your Honor, but that's clearly not this case. We had – The question is why should the burden be any different? I mean, in the first place, it's pretty close to an impossible burden, given Rule 606. But why should the burden be any different on a defendant who receives an unfair trial? Because government agents – and I'm not talking about this case. I'm talking about a rule. Government agents engage in conduct that's improper, and it intimidates the jury. Why should that – the burden not be on the government for that conduct, rather than the defendant? Your Honor, I think that – I think that this circuit in Dutkill, following up on the Supreme Court ruling, which is the case that Justice Kennedy versus Phillips in Alano has said that you have a different situation when you don't have jury tampering. It distinguished the traditional kind of jury tampering from what are called the more prosaic cases of leaving things in the jury room, you know, the normal ex parte contact cases. But it distinguished those two categories. But this is a new category that's sort of in the middle, where it is government conduct that intimidates the jury. I mean, that's the argument. Government conduct that – and we have to really figure out which side that that should be put in. And it's seen – there's a fairly strong argument that it doesn't matter whether it's intentional or not. What matters is that the government – and you have to assume the fact that the government has in some – somehow has interfered with a fair trial, albeit not intentionally, but by the conduct of its agents, whether that's more like the traditional jury tampering or more like what they call the prosaic, you know, unintentional contact. Again, Your Honor, in this case, you have – you have the more prosaic type of conduct here. You had – of the testimony presented at trial from the jurors, two of the jurors said they weren't influenced at all. One said he wasn't intimidated. Juror Walker's testimony was ambiguous. I mean, I suppose on the outer edges, if you had a case where you in fact did have a packed courtroom of agents staring down the jury box for two full weeks – I mean, as we say in our brief, there was at most seven. Several of them – two of them – a few of them are the case agents. One of them is the expert witness we're going to be putting on. Another one was in the courtroom for an hour because he thought his fellow summary agent was going to be testifying, but it turned out he didn't testify. So it's – but if – I mean, I suppose if you had a really strong factual situation at this side, that it could be the case, but that's not this case, Your Honor. Let me ask you about – I'm a little confused here about if this is an ex parte contact, and then the burden becomes you have to show that the jurors were – that there was prejudice to the defendant, I take it, because of the ex parte contact. Is that the rule? If we're talking – if we now move to the ex parte side, away from jury dampering? Yes, Your Honor. Prosaic – let's call it prosaic ex parte contact. Then the – then the rule is you have to show that there was prejudice to the defendant from it, correct? No. Then the rule becomes that the burden is on the defendant to show – Show what? The defendant bears the burden of proving actual juror bias. Actual juror bias. And how do you do that in the context with Rule 606b over the top of it? I'm just interested in how you think it should have worked. If you thought – Your Honor, I think – in our view, Your Honor, the way it should have worked was exactly the way it happened in the courtroom. In this case, I think the district court throughout properly, carefully, and appropriately considered this motion, set up the structure for the hearing. All right. I want – I was looking for a standard here. Okay. It's his burden – there's an ex parte contact of a prosaic nature, and it's his job to show actual jury bias in your view, which I called prejudice, which is the same – we're on the same wavelength there. Then what kind of thing would he have to show? Give me an example of what he would have to show. I suppose he could show that – I suppose that if he could show that the government employees in – made some – perhaps made a gesture. I mean, in this case, there was no gesture, but if he made – How would that show actual jury bias? You're going to have to turn to what the juror – the effect on the juror. And how does he prove that? I mean, it can't be a rule that just can't be satisfied because of Rule 606b. There must be something that – some way to show actual juror bias. If, say, you know, it was a – You know, there would have to – it would have to be – Because you know what this is – The structure would be limited to what was going on in the jury's minds during the course of the case, of the trial, before deliberations. I see.  So you say they could show actual jury bias by investigating what the jurors thought during the trial. That seems to be the split that was made. I think an appropriate split, given Rule 606b. All right. Thank you. Thank you, Your Honor. We would ask that the – you affirm the district court's denial and motion for new trial. Thank you. Counsel, we'll give you a minute or two, if you'd like. Mrs. Merch did point out for me, as she usually does, that the notice of appeal is at 254, and it does cover the order on 239, which excluded those affidavits and the statements. Now, did you argue that then in your briefs? No. I know I quoted them in the beginning of the opening brief, a number of them. So I would say, to that respect, I did argue them, and hopefully I did so diligently. But it was an issue for me, because the issue was that this person claimed that she was intimidated at one point, got better, and then at the end she gave us an affidavit after the trial was done and said she was worried about losing everything she had. And yet we could not get into that topic. It was excluded from us, and we were diligent in telling everyone not to get into that topic. And I think that is important. I still don't understand whether you think you should have been allowed to get into that topic. I believe wholeheartedly. I think you were allowed to do that under Rule 606B. I think I was. And you think you appealed that. I do believe that, and I just couldn't get there. I couldn't. I mean, it was one of those things they wouldn't let me, under 606B, get into that area because of the order of the court that's shown on 239 of the transcript. Could you tell me specifically what it is that you were prevented from asking about by the order? What would you have asked the witnesses? I mean, aside from asking them what was the effect in the jury room, aside from that, what would you have asked them? I would have asked them during the course of the litigation, was there ongoing discussions concerning retaliation against jurors by certain IRS auditors and the fact that the – and because of the conduct by the IRS against the Rutherford, that it made it difficult for them to properly rule in favor of my client. That would be one question I would have asked. That was really a hearsay objection that the district court had, wasn't it? Wasn't that the reason he excluded that case? You've got a good memory, because there was – I was reading this morning, there was a hearsay exception brought up where Judge Reed said, I'm not going to allow something in because it was hearsay. And I can't remember if I said or I thought I said that I'm not bringing it for the truth to show that these statements are being made and they're having an impact. They don't have to be truthful that the IRS is going to go and retaliate and hurt these people. But I have a small, for lack of a better word, a small army sitting in there looking at these jurors. They're right next to them. I then have, at the end of the trial, after a trial in which they brought no real experts and we brought four experts and spent thousands and thousands of dollars, and at the end I have jurors coming to me saying that we were afraid. And we were afraid and we were afraid during deliberations. And I think that that's not intrinsic, but it's more of an – I mean, it's outside 606B and I should have been allowed to absolutely explore that to find out one of two things at least. To find out, number one, was there really some bias going on in that room because it related back to the original, you know, location of all these people in the courtroom. Because this case involved these people that for a long, long period of time had paid an awful lot of taxes and literally got it. I mean, they got hurt on this deal. And as you can tell in some of these affidavits, and I would implore you to take a look at them. You probably have there one around 137 through 140. It becomes very, very clear that these people, they weren't deciding this case based upon what they saw in that courtroom. They were deciding this case based upon what the government could do. And the reason they really believed the government could do that is because these people were sitting there in a courtroom and, at least in our opinion, were staring very harshly at these people as they turned their heads. I don't believe, in fact, that a juror should have to turn halfway through a trial or two weeks into a trial, turn and start to look away at somebody else so that they can get over a fear. Because I think they lose the evidence. They certainly lose the impact. If every time they're looking at somebody that fear runs through their body, then they come back into it. I mean, it's ‑‑ All right. I think we've been through that part. But thank you. Thank you both very much. The case just argued will be submitted. Thank you. Thank you. Good to meet you. Take care. Thank you. Thank you.
judges: B. Fletcher, Reinhardt, Restani